IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 1:10-CV-627 |
| v. | ) | |
| HILLSBOROUGH PIZZERIA, INC., d/b/a VINNY'S ITALIAN GRILL, | ) ) ) | COMPLAINT |
| | ) | JURY TRIAL DEMAND |
| Defendant. | ) ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to Jacqueline Smith Sorrell, Maranda Wilkerson, Sarah Johanson, and other similarly situated female employees who were adversely affected by such practices. Specifically, Plaintiff Equal Employment Opportunity Commission (the "EEOC" or the "Commission"), alleges that Defendant, Hillsborough Pizza, Inc., d/b/a Vinny's Italian Grill ("Defendant"), subjected Sorrell, Wilkerson, Johanson and other similarly situated female employees to a sexually hostile work environment because of their sex, female. The Commission also alleges that Defendant constructively discharged Johanson and other similarly situated female employees and discharged Sorrell and Wilkerson and other similarly situated female employees in retaliation for complaining about the harassment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina, Durham Division.

## PARTIES

3. Plaintiff, EEOC, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a North Carolina corporation doing business in the State of North Carolina and the Town of Hillsborough, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Sorrell filed a charge with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. From at least April 2008 and continuing, Defendant engaged in unlawful employment practices at its restaurant in Hillsborough, North Carolina in violation of Sections 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1) and 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) as set forth below.

8. <u>Jacqueline Smith Sorrell - sexual harassment</u>. From around April 2008 until around April 28, 2009, Defendant subjected Jacqueline Smith Sorrell to sexual harassment that created a sexually hostile work environment based on her sex, female. The harassment was perpetrated by one of Defendant's male managers, who was in Sorrell's direct line of supervision. The harassment was severe or pervasive in that it occurred on a daily basis and included graphic unwelcome sexual comments and language. The sexual comments included but were not limited to such things as the manager telling Sorrell that he wanted to "French kiss" her; repeatedly asking her about her sexual relationship with her husband; asking whether Sorrell and her husband had sex the previous night and "how did his cum taste?;" and stating "I like my women shaved" while making faces at Sorrell simulating oral sex. In addition, the manager frequently told Sorrell explicit stories about his sexual encounters with women. For example, on one occasion the manager described to Sorrell an incident where his wife and another woman had sex while he watched and masturbated. Another time, he described having

oral sex with a "stewardess" and then proceeded to simulate having an orgasm in front of Sorrell. The manager told these types of graphic stories almost every day. On a regular basis the manager also left Sorrell sexually explicit notes stating things like "Do you want me[?] Do you dream about my love enter[ing] your tunnel then into your mouth."

9. Sorrell told the manager repeatedly that she thought his comments were inappropriate and to stop making such comments to her. Sorrell also complained about the manager's behavior to Defendant's managing co-owner. The managing co-owner responded by saying things like "it's no big deal." Although Sorrell complained about the unwelcome sexual comments and conduct to Defendant, and Defendant otherwise knew or reasonably should have known about the harassment, the harassment continued.

10. <u>Maranda Wilkerson - sexual harassment</u>. From around September 2008 until around April 2009, Defendant subjected Maranda Wilkerson to sexual harassment that created a sexually hostile work environment based on her sex, female. The harassment was perpetrated by the same male manager who subjected Sorrell to unwelcome sexual conduct, and who was also in Wilkerson's direct line of supervision. The harassment was severe or pervasive in that it occurred on a daily basis and included graphic unwelcome sexual comments and language. The sexual comments included but were not limited to such things as the manager telling Wilkerson stories about the sex he had with various women during the previous night. He once told Wilkerson a particularly graphic story about removing his girlfriend's used tampon from her vagina using his mouth. The male manager would make comments to Wilkerson about how he wanted to put his "love boat in [Wilkerson's] love tunnel." The male manager also left

4

Wilkerson graphic notes describing sexual acts. Wilkerson was offended by the manager's comments and conduct, told the male manager that she was married and asked him to leave her alone, but the manager continued to make unwelcome sexual comments to her. The male manager would also ask Wilkerson why she stayed with her husband and say that she was "too young to be married."

11. Wilkerson complained to the managing co-owner about the male manager's sexually inappropriate comments. Although Wilkerson complained about the unwelcome sexual comments and conduct to Defendant, and Defendant otherwise knew or reasonably should have known about the harassment, the harassment continued.

12. <u>Sorrell and Wilkerson - retaliation discharge</u>. Around April 28, 2009, Sorrell complained to a female acting manager that the male manager made comments about wanting to "French kiss" Sorrell, that he simulated having an orgasm in front of her, and that he left her sexually explicit notes. At that same time, Wilkerson was present and also complained that the male manager made sexual remarks to her. The female acting manager told Sorrell and Wilkerson that she would "take care of it."

13. On or about the following Monday, May 4, 2009, both Sorrell and Wilkerson were fired by the same male manager against whom they had complained of sexual harassment. The male manager told Sorrell and Wilkerson that they were being fired for lying on him.

14. Sorrell and Wilkerson complained about the sexual harassment and were fired within a week in retaliation for engaging in a protected activity.

15. <u>Sarah Johanson - sexual harassment and constructive discharge</u>. From

5

around November 2008 until around March 2009, Defendant subjected Sarah Johanson to sexual harassment that created a sexually hostile work environment based on her sex, female. The harassment was perpetrated by the same male manager who subjected Sorrell and Wilkerson to unwelcome sexual conduct, and who was in Johanson's direct line of supervision. The harassment was severe or pervasive in that it occurred on a daily basis and included graphic unwelcome sexual comments and language. The sexual comments included but were not limited to such things as telling Johanson that she was "sexy," and that he wanted to "French kiss" her. The male manager described in detail sexual acts that he had engaged in with other women and said that he wanted to do those acts to Johanson. The male manager described putting his girlfriend's used tampon in his mouth and suggested he wanted to do something similar with Johanson. The male manager would talk to Johanson about Defendant's other female employees in a sexual manner. For instance, he told Johanson that he took another female employee in the back of the restaurant to the food preparation area to have sex. The male manager also told Johanson that he wanted to have sex with Johanson and that he wanted to have oral sex with her. The male manager would also make faces at Johanson simulating oral sex.

16. Johanson was offended by the male manager's sexual comments and told him to stop making them. The harassment was so intolerable that Johanson was forced to resign in or around March, 2009.

17. <u>Other aggrieved individuals</u>. Defendant subjected other similarly situated female employees to the sexually hostile work environment that it knew existed and which was created by the same male manager who subjected Sorrell, Wilkerson and

Johanson to unwelcome sexual conduct and who was a supervisor in the direct line of supervision of the similarly situated female employees. The sexual comments and conduct that the male manager engaged in that was based on sex, female, was severe or pervasive, and created a sexually hostile work environment for female employees at the restaurant. Additionally, on information and belief, other female employees were forced to resign because the harassment was intolerable or were discharged as a result of complaining about the harassment.

18. The effect of the practices complained of above has been to deprive Sorrell, Wilkerson, Johanson and other similarly situated female employees of equal employment opportunities and otherwise adversely affect their status as employees, because of their sex, female and/or in retaliation for engaging in protected activity under Title VII.

19. The unlawful employment practices complained of above were intentional.

20. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Sorrell, Wilkerson, Johanson and other similarly situated female employees.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in a sexually hostile work environment or any other employment practice which discriminates on the basis of sex, and from retaliating against employees who oppose practices made unlawful by Title VII.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Sorrell, Wilkerson, Johanson and other similarly situated female employees, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay.

D. Order Defendant to make whole Sorrell, Wilkerson, Johanson and other similarly situated female employees, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to, medical expenses, in amounts to be determined at trial.

E. Order Defendant to make whole Sorrell, Wilkerson, Johanson and other similarly situated female employees by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

F. Order Defendant to pay Sorrell, Wilkerson, Johanson and other similarly situated female employees punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

DATED this 16th day of August 2010.

> Respectfully submitted,
>
> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
>
> P. DAVID LOPEZ
> General Counsel
>
> JAMES L. LEE
> Deputy Counsel
>
> GWENDOLYN YOUNG REAMS
> Associate General Counsel
> EQUAL EMPLOYMENT
> OPPORTUNITY COMMISSION
> 131 M Street, NE
> Washington, DC 20507
>
> ___s/Lynette A. Barnes_____
> LYNETTE A. BARNES (NC Bar 19732)
> Regional Attorney
> E-mail: Lynette.Barnes@eeoc.gov

9

TINA BURNSIDE (WI Bar 1026965)
Supervisory Trial Attorney
E-mail: Tina.Burnside@eeoc.gov


　s/ Nicole A. Epstein
NICOLE A. EPSTEIN (NC Bar 26689)
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, North Carolina 28202
Telephone:  (704) 954-6468
Facsimile:   (704) 954-6412
Email: Nicole.Epstein@eeoc.gov